UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHARLES A. EVANGELISTA, )<br>Plaintiff )<br> )<br>v. )<br> )<br>SHANE MARCOTTE, JASON FANION, )<br>DANIEL FALLON, III, JONATHAN COTTER, )<br>JAMES JOHNSON, CARL SUPERNOR, and )<br>THE CITY OF WORCESTER, )<br>Defendants )<br> ) | CIVIL ACTION<br>NO. 05-CV-10311-MLW |

**PLAINTIFF'S REPLY TO DEFENDANTS'
OPPOSITION TO MOTION TO COMPEL**

The Plaintiff, Charles A. Evangelista ("Evangelista"), hereby replies to the Defendants' Opposition to Plaintiff's Motion to Compel Production of Documents and Further Answers to Interrogatories (the "Opposition"), as follows:

1.      On page 3 of their Opposition, the Defendants assert that personnel files are privileged under Massachusetts law, citing to the Massachusetts Public Records Law, M.G.L. c. 4, § 7, cl. Twenty-sixth(c).

Second, even if Massachusetts privilege law applied here (which it does not given the presence of federal claims), the Defendants misconstrue the import of the Massachusetts Public Records Law. This law simply sets forth what documents are available to the public at large without any showing of need. It does not seek to limit what is discoverable among litigants. See *Commonwealth v. Wanis*, 426 Mass. 639, 642, 690 N.E.2d 407, 411 (1998) (right of criminal defendant to discovery of internal affairs rerecords

*not dependent on whether records subject to disclosure to public under Massachusetts Public Records Law; determination is to be made pursuant to normal discovery procedures)*; <u>Boston Police Superior Officers Fed'n v. Boston</u>, *414 Mass. 458, 465-466, 608 N.E.2d 1023, 1027 (1993) (Public Records Law and exceptions do not restrict ability of Labor Relations Commission to subpoena Internal Affairs records in context of complaint proceeding)*. Here, the personnel files of the individual defendants are reasonably calculated to lead to admissible evidence in this civil rights action as such documents likely will reveal any past discipline, allegations of misconduct, the City's response thereto, and the training (or lack of training) of the individuals. Several of the officers have already testified that they have been investigated by Internal Affairs in the past, only to have the allegations against them deemed by Internal Affairs to be unsubstantiated (the same result as the Internal Affairs investigation of the Evangelista matter). Whatever privacy interests the Defendants have can be more than adequately protected by making the disclosure of such documents subject to the provisions of the Protective Order, issued by this Court on March 14, 2005 (Docket No. 27).

2.  On page 4 of their Opposition, the Defendants likewise assert that Internal Affairs records and records of complaints are protected as "investigatory materials" under clause Twenty-sixth(f) of M.G.L. c. 4, § 7. Again, whether a record is available to the public at large under the Massachusetts Public Records Law does not determine whether it is discoverable by a litigant in the context of civil discovery. Moreover, even if this exception to the Massachusetts Public Records Law constituted a privilege from discovery, by its own terms, it would only protect from disclosure, at most, documents

2

respecting those Internal Affairs investigations still actively under investigation. *Worcester Telegram & Gazette Corporation v. Chief of Police of Worcester*, 58 Mass.App.Ct. 16 (2003). In addition, the position of the defendant City of Worcester that the disclosure of such information will harm "the success of future police investigations" directly contradicts the published statements of its city manager as reported in the *Worcester Telegram & Gazette*. Attached hereto as Exhibit A is a copy of the article that appeared in the *Worcester Telegram & Gazette* on September 14, 2003, following the denial of the Supreme Judicial Court of Massachusetts to grant further appellate review of the Massachusetts Appeals Court's decision cited above. In the article, City Manager Thomas R. Hoover is reported as announcing that the City "will release records of completed cases in the future as public records in accordance with the court decisions." The article then purports to quote Hoover as follows:

> We plan on following the courts' decisions and it seems to me the court has indicated that these are public records, so that is the policy we must follow.

In contradiction to these comments, the City is now seeking to bar Evangelista, in the context of a civil rights case, to learn whether the police have engaged in similar incidents in the past and whether the police department failed to discipline the officers involved, information directly relevant to Evangelista holding the City liable on his claims. Whatever legitimate privacy interests the Defendants can be protected by making the disclosure subject to the Protective Order, issued March 14, 2006.

3. On page 5 of their Opposition, the Defendants state that the Protective Order, issued on March 16, 2006, would not cover the documents sought here. Any

concern about the scope of the Protective Order can be addressed by having the order compelling production explicitly state that the production of documents is subject to such Protective Order.

    4.    On page 5, in footnote 1, of their Opposition, the Defendants assert that Evangelista is inconsistent on the time period with respect to which he seeks documents concerning other lawsuits and Internal Affairs investigations. The Defendants then treat Documents Requests 3 and 5 and Interrogatory No. 10(a) as seeking information since 1980 (which is contrary to the explicit limitations set forth in counsel's May 31, 2006 letter and Evangelista's Memorandum in Support). With the exception of one typographical error on page 11 (stating 2003 instead of 1993), Evangelista's Memorandum in Support makes clear that the scope of these requests is limited to the period since January 1, 1993. As limited, much of the Defendants' argument concerning undue burden is off the mark.

WHEREFORE, for the foregoing reasons and the reasons set forth in his previously-filed supporting Memorandum, the plaintiff, Charles Evangelista, respectfully requests that this Court allow his Motion to Compel Production of Documents and Answers to Interrogatories.

Respectfully submitted:

CHARLES A. EVANGELISTA

By his attorneys:

/s/ William T. Harrington
John T. Landry, III (BBO NO. 544388)
William T. Harrington (BBO No. 564445)
Glynn, Landry, Harrington & Rice, LLP
10 Forbes Road, Suite 270
Braintree, MA  02184-2605
(781) 356-1399

Dated:  September 5, 2006

### CERTIFICATE OF SERVICE

I hereby certify that, on September 5, 2006, I filed this document with the Court electronically via the Court's CM/ECF system and that I served a copy of this documents upon each counsel and party who has appeared in the action but who has not signed up to receive electronic notice, serving a copy by first class mail.

/s/ William T. Harrington
William T. Harrington

| Home | Entertainment | Community | Yellow Pages | Personals | Real Estate | Jobs | Cars |

# TELEGRAM&GAZETTE

**Worcester Telegram & Gazette Archives**

Previous Page
Archives Start Page

## Online Archives
*Full Story*

### Worcester Telegram & Gazette (MA)

#### City to open case records to public eye

September 14, 2003
Section: NEWS
Page: A1

By   John J. Monahan

**Archive Information**
Use the form to the left to search past issues of the Telegram & Gazette and the Sunday Telegram. This online archive contains the text of most staff-written articles from Jan. 16, 1989, to the present.

Search results will display the headline and a summary for each story. The search is free. The cost of viewing the full text is $1.95 per article.

**The archive contains:** staff-written stories, editorials, court listings, obituaries and wedding/engagement announcements dating back to Jan. 16, 1989. It does not include community bulletin boards, weather data, letters to the editor, sports scoreboards or stories by wire services and syndicated columnists.

**Photographs** are also not available in these archives, but you may order a print of a staff photo by clicking here.

WORCESTER -- City officials, who for many years have kept records of citizen complaints against police officers secret, said they will treat them as public records in the future, in line with a precedent-setting series of court rulings in a test case brought by the Telegram & Gazette.

City Solicitor David M. Moore on Thursday sent to the newspaper the complete records of an internal affairs investigation into a complaint of alleged **excessive force** brought by Worcester resident Shawn Wilder in May 2000. The disclosure ended a three-year legal contest in which the state courts repeatedly ruled against city claims that the files or portions of them should be kept confidential, and ordered the city to turn them over to the newspaper.

Superior Court Justice James P. Donohue in a two-page ruling last November declared nothing in the files fell within any exemptions to the state's public records law, and that the city would have to disclose the full case file.

His ruling followed a decision by the state Supreme Judicial Court last year that rejected city claims that confidentiality

provided by the courts in the case of records of a Wakefield school teacher should be extended to police internal affairs and misconduct investigations.

The city appealed Judge Donohue's ruling to the state Appeals Court, which reinforced the SJC's earlier ruling in April.

In the ruling, the three-member judicial panel wrote that the public's ``full and fair assessment of a police department's internal investigation of its officers' actions, promotes the core value of trust between citizens and police, essential to law enforcement and the protection of constitutional rights.''

Most recently the city appealed that decision to the SJC, and the state's highest court decided the case merited no further review, allowing the Appeals Court ruling to stand and forcing the city to comply with Judge Donohue's order.

The rulings allow the city to keep from public view certain portions of records of complaints and internal affairs investigations, disclosure of which could hamper internal investigations, until the investigations are completed. The rulings, however, rejected city claims that the names of the police officers, witnesses, complainants, investigatory conclusions, times and dates could be edited out of reports that are released when the investigations are over.

City Manager Thomas R. Hoover said Friday that the city will release records of completed cases in the future as public records in accordance with the court decisions.

``We plan on following the courts' decisions and it seems to me the court has indicated that these are public records, so that is the policy we must follow,'' Mr. Hoover said.

``I think this will have implications throughout the commonwealth,'' he added.

Indeed, the case is being viewed as a precedent by the American Civil Liberties Union of Massachusetts, which has a number of requests pending with local police departments in cases it has taken up on behalf of people who have complained about abusive treatment from police.

Ronal C. Madnick, executive director of the Worcester County Chapter of the ACLUM, said several police departments have held up compliance with other orders from the Secretary of State's Supervisor of Public Records to disclose internal affairs records, awaiting the outcome of the Wilder case.

``I think the Telegram & Gazette did a great public service on this one. It was an expensive proposition for them since the city kept appealing. I don't know if any private individual or private organizations could have afforded to bring that kind of action,'' he said.

Secretary of State William F. Galvin said the decisions in the case will remove a cloud of confusion over the public nature of police records, including police claims that internal affairs investigations should be kept from the public just as personnel records such as performance evaluations are kept from the public.

``It clearly shows that police departments cannot hide behind the statement that it is a personnel file and put things in there that are extraneous,'' Mr. Galvin said. ``Secondly it made it clear when you evaluate these on a case-by-case basis that documents not related to personnel evaluations of individuals are clearly in the public domain.

``I think this is going to go a long way to resolving these issues on what is in the public domain,'' he said.

Mr. Galvin, whose office oversees compliance with the state public records law, said the Wakefield teacher ruling ``cast some confusion'' on what police records would be deemed public under the law. The Wilder case, he said, resolved those issues as well as many others relating to public access to police records that were reviewed by the courts as they reviewed the Worcester case.

``Every aspect of this law has now been discussed by the courts and determined by the courts. For those of us sworn to uphold the law it is now clear what the law is,'' Mr. Galvin said. ``They have laid out a clear, shiny bright line as to what is and what isn't public record,'' he said.

The accountability to the public assured by the ruling, he said, will help police chiefs and police commissions in handling cases involving alleged police misconduct or abuses by providing ``transparency'' to what had often been a closed process.

``It gives some assistance to police chiefs and commissioners because it means their decisions are going to be subject to public review. Knowing those decisions are out there, those chiefs will have another incentive to hold to a high standard and I think we are seeing that already,'' Mr. Galvin said.

The newspaper was forced to seek enforcement of the public

records law on its own, when Attorney General Thomas F. Reilly declined to enforce the Public Records disclosure order issued by the Secretary of State's office.

Mr. Reilly made no public comment about that decision but subsequently said he would delay any action on other pending public requests for police internal affairs records until the Wilder case was completed.

Mr. Madnick said since the Wilder case was brought to the courts by the newspaper, a number of other police departments have refrained from releasing records involving complaints against police citing the Wakefield teacher ruling. The attorney general also cited the Wakefield ruling in deciding to take no action to enforce other public records disclosure orders from the Secretary of State's office.

In a letter to the ACLU three years ago, lawyers in Mr. Reilly's office said they would hold up enforcement action on those pending disclosure orders until the courts clarified the application of the Wakefield ruling in police cases, especially as it related to disclosing the names of police involved in citizen complaints.

At that time, Pamela M. Dashiell of the attorney general's staff wrote that ``without further judicial guidance on the adequacy of a showing which will justify the disclosures of identities of the subjects of the complaints, the office of the attorney general declines to take enforcement action.''

Although Mr. Reilly, whose Watertown home was heavily damaged by fire last week, did not respond to a request for comments on the rulings, Mr. Galvin said he hopes the rulings will prompt the attorney general to begin enforcing orders for disclosure of such police records.

``I would hope the attorney general finds the same enlightenment from this case that I do, now that the issues are clear,'' Mr. Galvin said.

Police union officials and police chiefs serving in Worcester over the last four years have all objected to disclosure of the records. City officials have claimed police had rights to privacy that would be violated by the disclosures and at some points claimed that disclosures would discourage people from coming forward to file complaints or cooperate with internal affairs investigations.

Many actual complainants in Worcester cases, including Mr. Wilder, who was injured in the incident that prompted his complaint, have maintained they do not want the complaints or

investigations kept confidential and want the public aware of their complaints and how they are handled by police.

Mr. Wilder brought his complaint against Worcester Patrolman Michael A. Tarckini after he said he and a friend were stopped about 2 a.m. walking on Main Street. A police officer investigating a report that a car had been taken out of a closed parking garage pulled up and held the two men at gunpoint, demanding they lay on the ground.

While other police officers were trying to locate the men who left the garage in a black Jeep, according to the records released last week, Mr. Wilder, who was recovering from a broken neck from a car crash, told the officer he could not lie down because of the injury. The officer persisted, made him get on the ground and then stepped on his neck with his foot. Mr. Wilder passed out and was rushed by ambulance to the hospital.

In the months that followed, he said, he suffered extensive pain and would need surgery to repair the damage to his neck. At the time, he said, his neck was held together with wires inserted in surgery.

``I would rather have all of this public. Their excuses are pitiful. None of them ever asked how I was going to be," Mr. Wilder said of the internal affairs investigation that exonerated the officer.

``I can't sleep well. My neck right now is held on by wire. The pain runs between my neck and my shoulders. I can't sleep well. The pain is sharp and constant whenever I move," Mr. Wilder said. ``I felt horrible not only going through this, but knowing the guy who did this is getting away with it. They can do whatever they want," Mr. Wilder told the Telegram & Gazette.

Reports of problems with police handling of citizen complaints against officers prompted a series of public hearings by the city's Human Rights Commission in 1999, and the city subsequently expanded and reorganized its Internal Affairs Division.

At that time, police officials refused to disclose reports on citizen complaints to members of the commission saying they were not public records.

``I think the relationship between the Human Rights Commission and the Police Department is good and the communication exists today that may not have occurred in the past," Mr. Hoover said.

NAME: WORCESTER POLICE DEPARTMENT
Previous Page

Archives Start Page
All content © 2003- Telegram & Gazette
and may not be republished without permission.
Send comments or questions to info@eworcester.com

The search is free. The cost of viewing the full text is $1.95 per article.

---

Archive FAQ
Search tips and cost information

**Support line: Call 1-800-896-5587**
e-mail support

News | Entertainment | Community
Yellow Pages | Classifieds | Personals
Weather | Privacy Policy | Contact us

©2003 Worcester Telegram & Gazette Corp.

Order the Telegram & Gazette,
delivered daily to your home or office!